IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DE-UNDRE ATKINS,

    Plaintiff,

vs.                                    CASE NO. 3:09cv561/RS-EMT

WAYNE-DALTON CORPORATION,

    Defendant.
_____/

**ORDER**

Before me is Defendant's motion for summary judgment (Doc. 39).

**I. STANDARD OF REVIEW**

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Plaintiff Atkins was an employee at Wayne-Dalton and had worked there for approximately six years. In 2008, Plaintiff's wife was pregnant. She was a high-risk pregnancy, and during the course of her pregnancy her doctor directed her to go to the emergency room on four separate occasions because of pregnancy

complications. She was restricted from working during the last month of her pregnancy.

On May 22, 2008, Plaintiff's wife was in pain and experiencing premature contractions. Her doctor directed her to leave her work and go straight to the emergency room, which she did, and she was admitted to the hospital. She contacted Plaintiff and told him she needed him at the hospital. Plaintiff could not find his supervisor, Jack Miller, so he told the stand-in supervisor, Lee Hull, about the situation. Hull authorized him to leave to go to the hospital. Plaintiff's wife was instructed by her doctor not to work for the next five days.

Plaintiff's next work day was May 27th. Upon his arrival at work, Plaintiff provided a doctor's note verifying that he had been at the hospital with his wife on May 22nd. Plaintiff also spoke to human resources about his absence, and explained to human resources that his wife was having complications with her pregnancy.

Later on May 27, 2008, Plaintiff's wife called him to inform him that she was experiencing further complications and her doctor had called her in for an unscheduled emergency appointment. Plaintiff informed Miller that he might need to leave work to be with his wife at the doctor, but he did not yet know. Miller said "okay." During Plaintiff's lunch break, his wife called him again and told him that because of ongoing complications, she needed him there with her at her

emergency appointment. Plaintiff approached Miller and informed him that his wife was having pregnancy complications and that he needed to leave to be with her. Plaintiff then left to attend to his wife, who was released from the hospital and instructed to immediately stop working until she gave birth to her child, which was not for another month.

The following day, May 28th, Plaintiff was terminated for absences. The department head referred to three disciplinary write-ups Miller had drafted. One was written on May 22nd and concerned a month-old incident that had nothing to do with absences and which had not resulted in any discipline in the intervening month. The other two documents referred to Plaintiff leaving work on May 22nd and on May 27th.

Plaintiff now brings claims against Defendant for violating the Family and Medical Leave Act and for racial discrimination under both Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992. Defendant has moved for summary judgment on all counts.

### III. ANALYSIS

#### Family and Medical Leave Act

Defendant has argued that it is entitled to summary judgment on Plaintiff's claim under the Family and Medical Leave Act ("FMLA") because (1) Plaintiff's wife did not have a serious health condition, (2) Defendant did not know that

Plaintiff's absences were due to his wife's serious health condition, and (3) Plaintiff's termination was not causally related to his FMLA leave requests.

Although a normal pregnancy might not qualify as a "serious health condition" under the FMLA, pursuant to 29 C.F. R. § 825.115(b) "any period of incapacity due to pregnancy, or for prenatal care" does qualify as a serious health condition. "The term "incapacity" means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b). Plaintiff has produced evidence that his wife had serious medical complications with her pregnancy and she was left unable to work during her pregnancy. Therefore, Plaintiff has produced sufficient evidence from which a jury could reasonably conclude his wife suffered from a serious health condition, and summary judgment is not appropriate on these grounds.

Next, Defendant alleges it did not know that Plaintiff's absences were due to his wife's serious health condition. However, Plaintiff has produced evidence that he notified both his supervisor as well as the Human Resources Department about his wife's serious health condition and his reason for leaving. This is sufficient information for an employer to reasonably determine whether the FMLA might apply to his leave request. *See* 29 C.F.R. § 825.303(b). Plaintiff has also presented evidence that he attempted to provide to his employer additional documentation on

May 28th (the day after his final absence) as to the FMLA reason for his absences, but his employer refused to hear the information. There is a significant dispute between the parties over the material facts of this situation and what Plaintiff told Defendant and when. These issues of fact must be resolved by a jury, and therefore summary judgment is not appropriate.

Finally, to establish a prima facie case of retaliation, a plaintiff must show a causal connection between the protected conduct and the adverse employment action. *Smith v. BellSouth Telecommunications, Inc.,* 273 F.3d 1303, 1314 (11th Cir. 2001). Defendant alleges that Plaintiff's termination was not causally related to his FMLA leave requests. However, Plaintiff disputes Defendant's contention and has presented evidence that the management at Wayne-Dalton knew about his FMLA requests and still terminated his employment based on his absence for FMLA protected activity. This disputed issue of fact clearly must be determined by a jury and therefore summary judgment is not appropriate.

## **Racial Discrimination**

Plaintiff has brought a claim for racial discrimination under both Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act ("FCRA"). Because the FCRA was patterned after Title VII, federal case law is applicable to both claims. *Florida Dept. of Community Affairs v. Bryant*, 586 So.2d 1205, 1209 (Fla. 1st DCA 1991).

To establish a claim for racial discrimination, a plaintiff may use direct evidence or circumstantial evidence of discrimination. *Burke-Fowler v. Orange County,* 447 F.3d 1319, 1323 (11th Cir. 2006). Here, Plaintiff bases his case on circumstantial evidence of discrimination. The framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), and *Texas Department of Community Affairs v. Burdine,* 460 U.S. 248, 101 S.Ct. 1089 (1981) is used in evaluating disparate treatment claims supported by circumstantial evidence. *See Wilson v. B/E Aerospace*, 376 F.3d 1079, 1087 (11th Cir. 2004). To establish a prima facie case of discrimination, the Plaintiff must show that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) he was qualified to do the job. *Burke-Fowler v. Orange County, Fla.* 447 F.3d 1319, 1323 (11th Cir. 2006).

In its summary judgment motion, Defendant only disputes the third prong, arguing Plaintiff has not presented evidence of a similarly situated comparator. Plaintiff concedes this point, but argues that under *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 (11th Cir. 1998), he can establish a prima facie case of racial discrimination based solely on "racial comments" made by his

7

supervisor Jack Miller, without showing that a similarly situated employee outside a protected class was treated more favorably.

In *Jones*, the Eleventh Circuit assumed "for the sake of argument that a plaintiff might be able to establish, by circumstantial evidence, a prima facie case even in the absence of showing that a similarly situated, nonminority employee has not been dismissed." *Jones* at 1323. However, the Court ultimately concluded that the statements at issue in *Jones* were not enough to establish a prima facie case because they were not associated with the events leading to the plaintiff's discharge. *Id.* Thus, one could not infer that it was more likely than not that her termination was based on an illegal discriminatory criterion. *Id.*

Here, we have absolutely no detail about Miller's alleged racial "jokes" or "comments." Plaintiff has not presented evidence of a single specific statement that was made by Miller for the Court to consider. Plaintiff also gives no context or time frame as to when the comments were made, particularly in relation to the date of his termination.

Even with specific examples of negative racial comments by a supervisor, the Eleventh Circuit concluded that there was insufficient evidence to establish a prima facie case without a demonstrable link between the comments and the events leading to the plaintiff's termination. *Jones* at 1323. Therefore, in the instant case the broad allegations of unspecified racial comments without any evidence that

8

they are linked, temporally or otherwise, to Plaintiff's termination are not sufficient evidence from which a jury could conclude that it is more likely than not that Plaintiff's termination was based on racial discrimination. Summary judgment is therefore appropriate for Defendants on Counts I and II.

## IV. CONCLUSION

Summary judgment is granted for Defendant against Plaintiff as to Count I and Count II. Summary judgment is denied as to Count III.

**ORDERED** on October 20, 2010.

>　　　　　　　　　　　　　**/s/ Richard Smoak**
>　　　　　　　　　　　　　**RICHARD SMOAK**
>　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**