IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DE'UNDRE ATKINS,

    Plaintiff,

vs.                                        CASE NO. 3:09cv561/RS-EMT

WAYNE-DALTON CORPORATION,

    Defendant.
_____/

## ORDER

### Background

Plaintiff De'Undre Atkins brought claims against Defendant Wayne-Dalton Corporation for violating the Family and Medical Leave Act ("FMLA") and for racial discrimination under both Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992. (Doc. 1). I granted summary judgment for Defendant on both racial discrimination claims. (Doc. 62).

A jury trial was held on the FMLA claim. Prior to trial, the parties stipulated to $12,250.00 as the amount of Plaintiff's lost wages, in the event that the jury found for the Plaintiff. (Doc. 72). A jury verdict was returned finding that Defendants violated the FMLA. (Doc. 82). Specifically, the jury answered four special interrogatories in the affirmative, finding that 1) Plaintiff's spouse suffered

from a serious health condition, 2) Plaintiff gave Defendant proper notice of the need to be absent from work, 3) Plaintiff was discharged from employment, and 4) Plaintiff's absence from work was a substantial or motivating factor that prompted Defendant to take action. (Doc. 82). After the jury was discharged, a hearing was held on the issue of liquidated damages.

Pursuant to 29 U.S.C. § 2617(A)(iii), any employer who violates the FMLA is liable to the affected employee for both the employee's lost wages, with interest, and for liquidated damages equal to the amount of lost wages and interest. However, if an employer proves to the satisfaction of the court that the act or omission which violated the FMLA was in good faith and that the employer had reasonable grounds for believe that the act or omission was not a violation, the court may in its discretion reduce the amount of liability to solely the amount of lost wages. 29 U.S.C. § 2617(A)(iii).

## Findings of Fact

Plaintiff testified that on May 22, 2008, he received a phone call from his wife stating that she was on her way to the emergency room due to pregnancy complications. She told Plaintiff that she would call him again if she needed him to come to the hospital. Later in the day, Plaintiff's wife again called and stated that she needed him to come to the hospital. Plaintiff didn't see his immediate supervisor, Jack Miller, so he told Lee Huff, the stand-in supervisor, that he needed

to go to the hospital because his wife was having an emergency due to pregnancy complications. Huff told Plaintiff that he could leave to go to the hospital, which Plaintiff did. His wife was put on bed rest and could not drive for the next four days. Jackson's testimony corroborated Plaintiff's version of events on May 22nd.

Plaintiff's next work day was May 27, 2008. Plaintiff testified that when he arrived at work he turned in a doctor's note explaining his absence on May 22nd to Doug Mote, who received such doctors' notes from employees. Plaintiff was approached by his supervisor Jack Miller, who asked him about his absence. Plaintiff told him that his wife had been in the hospital with pregnancy complications. Miller told Plaintiff he had put Plaintiff's absence down as a vacation day. Plaintiff explained about his doctor's note to Miller, but Miller did not want to change Plaintiff's absence to an excused absence. According to Plaintiff, he then spoke with Michelle Seymour in the Human Resources Department regarding his absence. Plaintiff explained to Seymour that he had turned in a doctor's note, which Seymour found in the file of doctors' notes. Seymour changed his absence on May 22nd to an excused absence. Plaintiff testified that he explained to Seymour that his wife had been having pregnancy complications, and that Seymour did not ask for any more information from Plaintiff.

Seymour's testimony confirmed that she saw the doctor's note from the May 22nd hospital visit, but Seymour denied having a conversation with Plaintiff about his wife's pregnancy complications. Seymour claims instead that she knew about Plaintiff's wife's pregnancy complications from speaking with Jack Miller. However, this distinction makes little difference since it still demonstrates that both Jack Miller and Michelle Seymour were on notice of Plaintiff's wife's medical condition, yet still did not provide him with FMLA paperwork or request any additional information, as required under FMLA.

Seymour further testified that even if Plaintiff had told her he was with his wife due to pregnancy complications, she would not have inquired further because it was privileged information, and that pregnancy complications did not trigger the FMLA in her mind. However, on cross examination, Seymour admitted that it was her obligation to ask an employee questions to determine if a medical situation was serious. She also stated that she knew based on her FMLA training that pregnancy complications are covered by the FMLA; however, she still did not give Plaintiff any FMLA paperwork. These apparent contradictions made her testimony less credible than Plaintiff's, and the jury apparently agreed with this assessment in its determination that that Plaintiff gave proper notice of his wife's serious health condition to Defendant.

Plaintiff testified that after his conversation with Seymour on May 27th, he returned to work. He then received a phone call from his wife, who stated that her doctor had called her to come in for an emergency appointment based on the test results from her visit to the hospital on May 22nd. She told Plaintiff that she would let him know if she needed him to come to the appointment. Plaintiff then told Jack Miller that he might need to leave later in the day due to his wife having more pregnancy complications, to which Jack Miller responded "okay." Plaintiff continued working, and during his lunch break he received a phone call from his wife saying that she needed him to come to the doctor's appointment. Plaintiff then told Jack Miller that he needed to leave work because his wife needed him at her emergency doctor's appointment. Plaintiff then left work to go to his wife at the doctor's office. Plaintiff's wife's testimony again confirmed this version of events.

The following day, May 28, 2008, Plaintiff returned to work. Shortly after lunch Jack Miller called Plaintiff into a meeting with Doug Mote and operations manager Andy Whitam. Whitam told Plaintiff that he was being terminated for his absences on May 22nd and May 27th. Plaintiff attempted to explain that he had given to the company a doctor's note from his May 22nd absence, and that he currently had in his possession a doctor's note for his May 27th absence that he

5

had not yet turned in. Whitam refused to listen to Plaintiff's explanations for his absences and told Plaintiff to leave the premises.

It was established at trial through the admission of Defendant's company handbook that under Defendant's company policy, if an employee has a FMLA issue arise, they are to speak either with human resources or their supervisor. Plaintiff's testimony established that he followed this procedure, by informing Jack Miller of Plaintiff's wife's pregnancy complications, as well as turning in a doctor's note that was received by Michelle Seymour in Human Resources. Furthermore, under Defendant's company policy, employees have seven days to turn in a doctor's note.

During Defendant's case, Andy Whitam maintained ignorance of Plaintiff's wife's pregnancy complications, despite the fact that Plaintiff had turned in a doctor's note to the company and told his supervisor about the situation. Whitam unequivocally stated that that the decision to terminate Plaintiff was a result of Plaintiff's absences on May 22nd and May 27th.

## **Conclusions of Law**

A district court's award of liquidated damages is reviewed for an abuse of discretion. *Cooper v. Fulton County*, 458 F.3d 1282, 1287-88 (11th Cir. 2006). Pursuant to 29 U.S.C. § 2617(A)(iii), to avoid an award of liquidated damages an employer must show not only that it acted in good faith but also that its conduct

was reasonable. *Id.* "In other words, if . . . the employer subjectively acted in good faith but its conduct was objectively unreasonable, then it is not an abuse of discretion to award liquidated damages." *Id.* at 1288.

In the instant case, I find that there was insufficient evidence of bad faith. However, Defendant's actions were not objectively reasonable—particularly in light of the jury's finding that Plaintiff gave Defendant proper notice of the need to be absent from work.

Defendant had in its possession a doctor's note explaining Plaintiff's first FMLA-related absence. Plaintiff attempted to present a second doctor's note explaining his second absence, but Defendant refused to accept it the day after his absence, despite its policy that employees have seven days to provide a doctor's note to excuse an absence. Furthermore, Plaintiff's testimony and the testimony of defense witness Michelle Seymour established that both Plaintiff's supervisor Jack Miller and Human Resources employee Michelle Seymour knew that Plaintiff's wife was suffering from pregnancy complications. Thus, the Defendant was on notice that Plaintiff's absences were due to FMLA-protected activity. The Defendant apparently chose to simply ignore this information and did not seek any further information or clarification from Plaintiff, as required under the FMLA. In light of this evidence, Defendant's decision to terminate Plaintiff was unreasonable. Therefore, an award of liquidated damages is appropriate.

7

**IT IS ORDERED:**

The Clerk is directed to enter judgment for Plaintiff against Defendant in the following amounts:

1. In accordance with the jury's verdict, compensatory damages in the amount of $12,250.00.

2. Pursuant to 29 U.S.C. § 2617(A)(iii), liquidated damages in the amount of $12,250.00.

3. Pursuant to the parties' stipulation (Doc. 86), pre-judgment interest in the amount of $2,000.00.

**ORDERED** on November 16, 2010.

>                     **/s/ Richard Smoak**
>                     **RICHARD SMOAK**
>                     **UNITED STATES DISTRICT JUDGE**